No. 24-1158

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

HABAS SINAI VE TIBBI GAZLAR ISTIHSAL ENDUSTRISI A.S.,

*Plaintiff-Appellant,*

v.

UNITED STATES, CLEVELAND-CLIFFS INC.,
STEEL DYNAMICS, INC., SSAB ENTERPRISES LLC,

*Defendants-Appellees.*

On Appeal from the United States Court of International Trade,
No. 1:21-cv-00527, Hon. M. Miller Baker

**NONCONFIDENTIAL VERSION**

**RESPONSE BRIEF FOR DEFENDANTS-APPELLEES
CLEVELAND-CLIFFS INC., STEEL DYNAMICS, INC.,
AND SSAB ENTERPRISES, LLC**

Stephen P. Vaughn
Daniel L. Schneiderman
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
(202) 626-2950
svaughn@kslaw.com
dschneiderman@kslaw.com

*Counsel to Cleveland-Cliffs Inc.*

Roger B. Schagrin
Jeffrey D. Gerrish
SCHAGRIN ASSOCIATES
900 Seventh Street NW
Suite 500
Washington, DC 20001
(202) 223-1700
rschagrin@schagrinassociates.com
jgerrish@schagrinassociates.com

*Counsel to Steel Dynamics, Inc.
and SSAB Enterprises, LLC*

February 26, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number**    2024-1158

**Short Case Caption**    Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi v. US

**Filing Party/Entity**    Cleveland-Cliffs Inc.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date    2/26/2024

Signature:    /s/ Daniel L. Schneiderman

Name:    Daniel L. Schneiderman

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Cleveland-Cliffs Inc. | | BlackRock, Inc. (10.56%) |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑    None/Not Applicable            ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐    Yes (file separate notice; see below)    ☑    No    ☐    N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable            ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

FORM 9. Certificate of Interest

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 24-1158 |
| **Short Case Caption** | Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi v. US |
| **Filing Party/Entity** | Steel Dynamics, Inc. and SSAB Enterprises LLC |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 2/26/24

Signature:  /s/ Jeffrey D. Gerrish

Name:  Jeffrey D. Gerrish

**FORM 9. Certificate of Interest**

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Steel Dynamics, Inc. | | Steel Dynamics, Inc. is a publicly traded company listed on the NASDAQ |
| SSAB Enterprises LLC | | SSAB Enterprises LLC is a subsidiary of SSAB AB which is a publicly traded company on the NASDAQ OMX Stockholm with a secondary listing on the NASDAQ OMX Helsinki |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑     None/Not Applicable          ☐     Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)     ☑   No     ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑     None/Not Applicable          ☐     Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... ii

STATEMENT OF RELATED CASES ..................................................... iii

STATEMENT OF THE ISSUE ................................................................ 1

STATEMENT OF FACTS ...................................................................... 1

SUMMARY OF ARGUMENT ............................................................... 1

ARGUMENT ....................................................................................... 3

I.      STANDARD OF REVIEW ........................................................ 3

II.     COMMERCE'S DECISION TO USE HOME MARKET PRICES
        DENOMINATED IN TURKISH LIRA WAS SUPPORTED BY
        SUBSTANTIAL EVIDENCE AND WAS IN ACCORDANCE
        WITH LAW ................................................................................ 3

III.    CONCLUSION AND STATEMENT OF RELIEF SOUGHT .................... 10

## CONFIDENTIAL MATERIAL OMITTED

Pursuant to Federal Circuit Rule 25.1(e) and the Protective Order issued in the underlying investigation, the Defendants-Appellees are filing a confidential version of this brief that highlights the material marked confidential, and a nonconfidential version that includes appropriate redactions.

The numerical data omitted on pages 5-7 are prices and quantities taken from a sales invoice submitted pursuant to an administrative protective order.

Redacted information is summarized by a "#" to represent a numerical value.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Canadian Solar, Inc. v. United States*,
    23 F.4th 1372 (Fed. Cir. 2022) ...............................................................3

*Bebitz Flanges Works Priv. Ltd. v. United States*,
    433 F. Supp. 3d 1309 (Ct. Int'l Trade 2020) ........................................9

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) ...................................................................3

19 U.S.C. § 1677b-1 .............................................................................4, 10

**Regulations**

19 C.F.R. § 351.415 .............................................................................4, 10

*Certain Hot-Rolled Steel Flat Products From the Republic of Turkey:
    Final Results of Antidumping Duty Administrative Review and
    Final Determination of No Shipments; 2016-2017*, 84 Fed. Reg.
    30694 (June 27, 2019) ...........................................................................8

*Stainless Steel Flanges From India: Final Affirmative Determination of Salesat
    Less Than Fair Value and Final Affirmative Critical Circumstance
    Determination*, 83 Fed. Reg. 40745 (Aug. 16, 2018) ……..…………………9

## STATEMENT OF RELATED CASES

In accordance with Rule 47.5 of the U.S. Court of Appeals for the Federal Circuit, counsel for Defendants-Appellees Cleveland-Cliffs Inc. ("Cleveland-Cliffs"), Steel Dynamics, Inc. ("SDI"), and SSAB Enterprises, LLC ("SSAB") state that no other appeal in or from this civil action in the lower court was previously before this or any other appellate court, nor is there any case known to counsel to be pending in this or any other court that will directly affect or be directly affected by the Court's decision in this appeal.

## STATEMENT OF THE ISSUE

Whether Commerce's use of the Turkish Lira ("TL") price rather than the U.S. dollar ("USD") price appearing on the home market sales invoices of Turkish producer Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi A.S. ("Habas") was supported by substantial evidence and in accordance with law, when only the TL price controlled the amount paid by Habas' customers and reconciled to Habas' financial accounting system.

## STATEMENT OF FACTS

In the 2018-2019 administrative review of the antidumping duty order on hot-rolled steel from Turkey, Habas' home market sales invoices reflected both a TL price and a USD price.  However, Habas was unable to show the USD price controlled the amount paid by its customers, Appx001070, and the reported USD values could not be reconciled to Habas' financial accounting system.  Appx001068-001069.  Accordingly, in the final results of the administrative review, the U.S. Department of Commerce ("Commerce") declined to use the USD price in the calculation of Habas' dumping margin.  *Id.*

## SUMMARY OF ARGUMENT

Defendants-Appellees Cleveland-Cliffs, SDI, and SSAB respond in opposition to the opening brief of Plaintiff-Appellant Habas.  Plaintiff-Appellant contests certain aspects of the final results issued by Commerce in *Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final Results of*

1

*Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018–2019*, 86 Fed. Reg. 47058 (Aug. 23, 2021) ("*Final Results*"), Appx001078, and the accompanying Issues and Decision Memorandum ("*IDM*"), Appx001061.

This is a very odd appeal. The issue presented is whether it was the TL price or the USD price – both of which appeared on Turkish producer Habas' home market sales invoices – that controlled the amount owed by its customers at the time of payment. Commerce found that it was the TL price that controlled, and that finding was supported by substantial evidence. Appx001068-001071. Plaintiff-Appellant does not explain why Commerce's factual finding was erroneous, let alone reversible under the applicable standard of review. Instead, in a brief long on verbiage and obfuscation but short on specificity and clarity, Plaintiff-Appellant effectively *presumes* the finding to be wrong, and then goes on to explain why, *assuming* the USD price were controlling, Commerce's decision not to use that price would be inconsistent with the agency's established practice. In so doing, Plaintiff-Appellant elides a key element of its argument, *i.e.*, demonstrating that Commerce's finding was unsupported by substantial record evidence. That omission is fatal to the appeal.

Commerce's *Final Results* were affirmed by the Court of International Trade ("CIT"), *Habaş Sinai ve Tibbi Gazlar Istihsal Endüstrisi v. United States*, 2023 Ct.

Intl. Trade LEXIS 136 (Slip. Op. 23-133) (Sep. 14, 2023), Appx000014-000017, and

that decision should be sustained.

## ARGUMENT

## I.    STANDARD OF REVIEW

This Court applies the same standard of review as the CIT and thus will "hold

unlawful any determination, finding, or conclusion found . . . to be unsupported by

substantial evidence on the record, or otherwise not in accordance with law."  19

U.S.C. § 1516a(b)(1)(B)(i).  Although the Court reviews decisions of the CIT *de*

*novo*, it "give{s} great weight to the informed opinion of the CIT, which is nearly

always the starting point of our analysis." *Canadian Solar, Inc. v. United States*, 23

F.4th 1372, 1378 (Fed. Cir. 2022) (internal citations omitted).

## II.    COMMERCE'S DECISION TO USE HOME MARKET PRICES DENOMINATED IN TURKISH LIRA WAS SUPPORTED BY SUBSTANTIAL EVIDENCE AND WAS IN ACCORDANCE WITH LAW

Plaintiff-Appellant argues that Commerce erred in using the TL value of its

home market sales rather than the USD value when calculating a dumping margin in

the underlying administrative review.   According to Plaintiff-Appellant, home

market sales were negotiated in USD, invoiced in USD, and paid for in USD.  *Pl.-*

*App. Br*. at 3.  Plaintiff-Appellant avers that, in other cases where "the USD price

controlled the ultimate amount the purchaser paid for the sales," *id.* at 20,

Commerce's established practice has been to use the USD value of such home

market sales in the dumping calculations (rather than to convert the foreign currency price in accordance with 19 U.S.C. § 1677b-1 and 19 C.F.R. § 351.415). This case, Plaintiff-Appellant argues, represents an arbitrary and unexplained departure from that practice. *Id*. at 9-25.

This argument should be rejected, because it relies upon a mischaracterization of the facts. As the CIT explained, "although the company provided evidence that the prices were negotiated, ordered, and set in dollars on the invoice date, Commerce concluded that Habas did not show that those prices ultimately controlled the final payment." Appx000016. To the contrary, the record demonstrates that it was the TL price on Habas' home market invoices – not the USD price – that controlled the amount paid by the customer.

In this case, the invoice, *i.e.*, the document establishing the relevant home market price, stated prices in TL. *See* Appx001068-001070, Appx001353. Although the invoice also reflected an exchange rate and a USD value, Commerce found that it was the TL value – not the USD value – that controlled how much the customer paid. *Id.* This was clear from both (1) the documentation provided by Habas for an individual sample sale, which shows that the USD amount appearing on the invoice does not control the payment amount, and (2) the aggregate sales values reported by Habas, which reconciled to the company's financial accounting system on a TL basis, but not on a USD basis. Appx001069-001070.

**CONFIDENTIAL MATERIAL OMITTED**

With respect to the individual sample sale, Habas contends that the documentation "demonstrates that the USD price does control the ultimate amount paid because prices were negotiated in USD, and the USD to TL price conversion was included on the invoice to the customer." *Pl.-Appl. Br.* at 21.  According to Habas, "the payment amount provided in the sample invoice was controlled by the USD-value appearing on the invoice, not the TL amount, as it was the same USD amount as that provided in customer communications, and the amount recorded in the supporting evidence for 'payment' provided by Habas is obviously in USD." *Id.* at 22.  This is demonstrably false, as Commerce correctly concluded.  Appx001070.

The only home market invoice provided by Habas shows a unit price of TL ▮#▮/kilogram ("KG"), or TL ▮#▮/metric ton ("MT"), and a quantity of ▮#▮ KG, or ▮#▮ MT, for a total value (net of taxes) of TL ▮#▮ and a total value (including the ▮#▮% VAT) of TL ▮#▮.  Appx001353.  That invoice also shows a USD price of $▮#▮/MT, which implies a total USD value (net of taxes) of $▮#▮ and a total value (including the ▮#▮% VAT) of $▮#▮.  Appx001353, Appx002246.  If the USD amount on the invoice had actually "controlled" the amount owed and paid by the customer, the amount paid would have been $▮#▮.  But in this case, the actual amount paid by the customer was $▮#▮.  Appx001360, Appx002246.  Commerce reviewed this sample documentation and correctly found that "the payment amount apparently has

**CONFIDENTIAL MATERIAL OMITTED**

no connection with the USD price and quantity shown on the invoice (*i.e.*, the payment amount does not equal USD price times quantity, or to USD price times quantity plus tax)." Appx001070. Thus, it would have been the TL price on the invoice that "controlled" the amount paid by the customer. In other words, the customer would simply pay the USD equivalent of the TL amount owed, using the exchange rate in effect on the date of payment. If the TL price (rather than the USD price) controls, then – assuming the TL lost value against the USD between the date of invoice and the date of payment – the USD payment amount would be something less than the $ ▮ # ▮ appearing on the invoice (because it would take fewer dollars to satisfy the fixed TL amount owed). That is exactly what occurred here, demonstrating that the TL price (not the USD price) on Habas' invoice was the "controlling" price.

In this case, Habas was unable to reconcile the $ ▮ # ▮ payment amount to the invoice, because Habas did not know the payment date (and thus the relevant exchange rate) for each invoice. Appx001070. Commerce correctly found that "the USD-denominated price shown on the invoice has no connection with the ultimate payment and thus, the TL-denominated price on the invoice is the final price."

**CONFIDENTIAL MATERIAL OMITTED**

Appx001070-001071.   The CIT reviewed the same evidence and agreed. Appx000009.[1]

In its brief, Plaintiff-Appellant contends that "the USD price controlled the ultimate amount the purchaser paid for the sales," *Pl.-App. Br.* at 20, but it does not explain how the evidentiary record even remotely supports, let alone compels, such a finding.   No such evidence exists.   Again, Habas simply reiterates that its "home market sales are negotiated, confirmed, and paid in USD."   *Id.* at 17.   But Habas ignores the salient facts that its home market sales also were invoiced in TL, and it was the TL price – not the USD price – that controlled the ultimate amount paid by the customer.   Nowhere in its brief does Habas explain why, if the USD value on the sample invoice was controlling, the customer ultimately paid $██#██ rather than the $██#██ amount appearing on the invoice.   Commerce's factual findings are supported by substantial evidence, and Plaintiff-Appellant cites no record evidence detracting from those findings.

Plaintiff-Appellant contends that this case represents a departure from other cases in which Commerce used USD-denominated prices when those prices

---

[1]   Notably, Habas itself selected the sample transaction for which it elected to provide documentation.  Appx001353 and Appx001360.  As explained in the *Final Results*, Commerce "sought additional payment documentation from Habas," but the company "failed to provide the requested documentation."  Appx001070.  *See also* Appx002246-002247.

controlled the amount paid by the home market customer. *Pl.-App. Br*. at 12-13, citing *Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2016-2017*, 84 Fed. Reg. 30694 (June 27, 2019) ("*2016-2017 HRS Final Results*"). In the 2016-2017 administrative review of Colakoglu, another Turkish hot-rolled steel producer, Commerce found that home market prices were fixed in USD at the time of invoicing and that "this USD price controls the ultimate amount that the purchaser pays for the sale." *2016-2017 HRS Final Results* at Comment 2. But, contrary to Plaintiff-Appellant's argument, the facts of this case simply are not comparable to the review involving Colakoglu. As explained above, in this case it was the TL-denominated amount on Habas' invoice (not the USD-denominated amount) that controlled the customer's payment. Appx001070-001071. Plaintiff-Appellant cites no precedent where Commerce used USD-denominated home market prices under the circumstances actually presented in the instant case, and thus there was no unexplained "departure" from established practice.

Even assuming *arguendo* that Habas had demonstrated it was the USD price (rather than the TL price) on the invoice that controlled the amount paid by the customer, the fact remains that Habas was unable to reconcile reported USD-denominated sales values to the company's audited financial statements. As Commerce explained, "having an accurate sales reconciliation is a prerequisite for

calculating an accurate weighted-average dumping margin because it shows whether the respondent accurately and completely reported the universe of its sales of in-scope merchandise." Appx001068. Absent such a reconciliation, Commerce's established practice has been to deem the reported sales to be unreliable and unusable. *Id.,* citing *Stainless Steel Flanges From India: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Critical Circumstance Determination,* 83 Fed. Reg. 40745 (Aug. 16, 2018), *aff'd Bebitz Flanges Works Priv. Ltd. v. United States,* 433 F. Supp. 3d 1309 (Ct. Int'l Trade 2020). Given Habas' inability to reconcile reported USD-denominated values for home market sales to its audited financial statements, Commerce reasonably concluded that those values were unreliable and should not be used in the dumping calculations. Appx001069. The CIT agreed. Appx000016-000017. Plaintiff-Appellant cites no authority or precedent that would require Commerce to use sales values that cannot be reconciled to the respondent's audited financial accounting system. Plaintiff-Appellant's argument, therefore, must fail.

Finally, Plaintiff-Appellant contends that using home market prices stated on a TL basis introduces "distortion" and produces "absurd results," because it employed unnecessary currency conversions (from USD to TL, and then back to USD) during a period of exchange rate volatility. *Pl.-App. Br*. at 25-30. As the CIT explained, however, Commerce did not unnecessarily convert home market prices

from USD to TL; rather, it used Habas' own TL-denominated sales values which reconciled to the company's financial accounting system.  Appx000017.  And Commerce's currency conversions employed when comparing home market and U.S. prices were made in accordance with the methodology prescribed by 19 U.S.C. § 1677b-1 and 19 C.F.R. § 351.415.  Appx001071.  Plaintiff cites no legal basis for a departure from that methodology or any precedent for doing so.  Commerce's methodology was consistent with the statute and regulation, and it should be upheld.

## III.  CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the reasons set forth above, Plaintiff-Appellant's arguments lack merit, and the CIT's decision affirming Commerce's *Final Results* should be sustained.

Respectfully submitted,

*/s/Daniel L. Schneiderman*
Stephen P. Vaughn
Daniel L. Schneiderman
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
(202) 626-2950
svaughn@kslaw.com
dschneiderman@kslaw.com

*Counsel to Cleveland-Cliffs Inc.*

*/s/Jeffrey D. Gerrish\**
Roger B. Schagrin
Jeffrey D. Gerrish
SCHAGRIN ASSOCIATES
900 Seventh Street NW
Suite 500
Washington, DC 20001
(202) 223-1700
rschagrin@schagrinassociates.com
jgerrish@schagrinassociates.com

*Counsel to Steel Dynamics, Inc.
and SSAB Enterprises, LLC*

\* Counsel consents to the use of his
electronic signature in this joint
filing.

February 26, 2024

10

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned counsel for Appellant certifies that this brief:

(i) complies with the type-volume limitation of Federal Circuit Rule 32(a) because it contains 2,182 words, including footnotes and excluding the parts of the brief exempted by Federal Circuit Rule 32(b) and Federal Rule of Appellate Procedure 32(f); and

(ii) complies with the typeface and style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because this document has been prepared using Microsoft Office Word 365 ProPlus and is set in 14-point Times New Roman font.

Date: February 26, 2024

*/s/Daniel L. Schneiderman*
Daniel L. Schneiderman

**FORM 31. Certificate of Confidential Material**

Form 31
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** 24-1158

**Short Case Caption:** Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi v. US

---

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).

- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

---

The foregoing document contains <u>11</u> number of unique words (including numbers) marked confidential.

☐ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☑ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☐ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: 02/26/2024

Signature: /s/ Daniel L. Schneiderman

Name: Daniel L. Schneiderman

Save for Filing