# 2024-1158

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

HABAS SINAI VE TIBBI GAZLAR ISTIHSAL ENDUSTRISI A.S.,

*Plaintiff-Appellant,*

v.

UNITED STATES, CLEVELAND-CLIFFS INC., STEEL DYNAMICS, INC., SSAB ENTERPRISES LLC,

*Defendants-Appellees.*

Appeal from The United States Court of International Trade
in Court No. 21-00527, Judge M. Miller Baker

## NON-CONFIDENTIAL REPLY BRIEF OF
## PLAINTIFF-APPELLANT HABAS SINAI VE TIBBI GAZLAR ISTIHSAL ENDUSTRISI A.S.

Jessica R. DiPietro
Leah N. Scarpelli
Matthew M. Nolan
ArentFox Schiff LLP
1717 K Street, N.W.
Washington, DC  20006
(202) 857-6000

*Counsel for Plaintiff-Appellant
Habaş Sinai ve Tibbi Gazlar Istihsal
Endüstrisi A.Ş.*

March 18, 2024

**FORM 9. Certificate of Interest**  Form 9 (p. 1)
  March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number**  2024-1158

**Short Case Caption**  Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi v. US

**Filing Party/Entity**  Habas Sinai ve Tibbi Gazlar Istihsal Endustris A.S.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: __03/18/2024___    Signature:  /s/ Jessica R. DiPietro

  Name:  Jessica R. DiPietro

FORM 9. Certificate of Interest                                               Form 9 (p. 2)
                                                                              March 2023

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi A.S. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

FORM 9. Certificate of Interest　　　　　　　　　　　　　　　　　　　　Form 9 (p. 3)
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　March 2023

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐　None/Not Applicable　　　　☐　Additional pages attached

| | | |
|---|---|---|
| Diana Dimitriuc-Quaia | | |
| Nancy Aileen Noonan | | |
| John A. Gurtunca (terminated 07/12/2022) | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐　Yes (file separate notice; see below)　　☑　No　　☐　N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑　None/Not Applicable　　　　☐　Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

I. Introduction ................................................................................................ 1

II. Argument .................................................................................................. 1

    A. Appellees Fail to Identify Substantial Evidence Supporting Commerce's Decision ................................................................... 2

    B. Appellees Fail to Demonstrate the Commerce's Decision is Consistent with Its Prior Decisions and Statutory Obligations .............................. 7

III. Conclusion And Statement Of Relief Sought ........................................ 10

**CONFIDENTIAL MATERIAL REDACTED**

    Pursuant to Federal Circuit Rule 25.1(e), the confidential material omitted from pages 3, 4 and 6 describes Habaş Sinai ve Tibbi Gazlar Istihsal Endüstrisi A.Ş.'s customer, pricing and quantity information derived from customer negotiations, purchase orders, and sales invoices submitted in its questionnaire responses. Specifically on page 3, redacted information relates to pricing & product characteristics information derived from customer purchase orders and invoices. Page 4 contains pricing information. Page 6 contains a customer name and characteristics. This information was designated "confidential" in the underlying U.S. Court of International Trade appeal and in the underlying U.S. Department of Commerce administrative proceeding submitted pursuant to an administrative protective order.

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*CS Wind Viet. Co. v. United States*,
    832 F.3d 1367 (Fed. Cir. 2016) ........................................................................... 5

*SKF USA Inc. v. United States*,
    263 F.3d 1369 (Fed. Cir. 2001) ......................................................................... 10

**Administrative Determinations**

*Certain Cold-Rolled Carbon Steel Flat Products From Turkey*, 67
    Fed. Reg. 62126 (Dep't Commerce Oct. 3, 2002), and
    accompanying Issues & Decision Memorandum ............................................ 8, 9

*Certain Hot-Rolled Steel Flat Products From the Republic of Turkey*,
    84 Fed. Reg. 30694 (Dep't Commerce June 27, 2019) (final AD
    results & no shipments determ.; 2016-2017), and accompanying
    Issues & Decision Memorandum .................................................................... 8, 9

*Certain Hot-Rolled Steel Flat Products From the Republic of Turkey*,
    86 Fed. Reg. 47058 (Dep't Commerce Aug. 23, 2021) (final AD
    results & no shipments determ.; 2018-2019), and accompanying
    Issues & Decision Memorandum ................................................................ 1, 4, 7

*Stainless Steel Flanges from the People's Republic of China*, 83 Fed.
    Reg. 13244 (Dep't Commerce Mar. 28, 2018) (prelim. affirm.
    LTFV determ.), and accompanying Decision Memorandum .............................. 5

AFDOCS:199719699.1

I. **INTRODUCTION**

Habaş Sinai ve Tibbi Gazlar Istihsal Endüstrisi A.Ş. ("Habaş") replies to the response briefs submitted by Defendant-Appellees, the United States ("Gov. Br.") (ECF 24) and Cleveland-Cliffs Inc., Steel Dynamics, Inc., and SSAB Enterprises, LLC (collectively, "Petitioners") ("Petitioners' Br.") (ECF 22). As discussed below, the Government and Petitioners fail to demonstrate that the challenged aspects of the Department of Commerce's ("Commerce") final antidumping duty ("AD") results in *Certain Hot-Rolled Steel Flat Products From the Republic of Turkey*, 86 Fed. Reg. 47058 (Dep't Commerce Aug. 23, 2021) (final AD results & no shipments determ.; 2018-2019), Appx000046-000048 ("*Final AD Results*"), and accompanying Issues and Decision Memorandum ("*Final Results IDM*"), Appx00033-000045,[1] are supported by substantial evidence and otherwise in accordance with law. For consistency, we refer to underlying documents from the administrative record using the abbreviated document names set forth in Habaş's opening brief (ECF 18) ("Habaş's Br.").

II. **ARGUMENT**

The record evidence in Commerce's review of hot-rolled steel flat products ("HRS") from Turkey supports a finding that all of Habaş's home market ("HM") sales were quoted, agreed upon, and paid in U.S. Dollars ("USD"). Commerce's

---

[1] "Appx__" refers to a page of the parties' Joint Appendix.

1

precedent and the law thus requires that Commerce rely on the USD value of those sales, rather than the Turkish-Lira ("TL") value.

### A. Appellees Fail to Identify Substantial Evidence Supporting Commerce's Decision

In the Turkish market, Turkish producers, including Habaş, rely on the USD-denominated price to avoid risk associated with large fluctuations in the exchange rate. Habaş relied on this USD "transaction currency" when responding to Commerce's questionnaires. Contrary to arguments that "dollar-denominated unit price on the invoice" are not controlling, *see* Gov. Br. at 23-24, the factual record supports that home market sales were made and confirmed with a U.S. Dollar value. Because invoices were issued in Turkish Lira as required by Turkish law, with the U.S. Dollar exchange rate specified, in its home market sales database, Habaş reported the gross unit price in U.S. Dollars and Turkish Lira. Habaş's Br. at 6-7. The record evidence also demonstrates that customers then made their payments to Habaş in U.S. Dollars. *Id.*

The United States and Petitioners argue that Commerce's *Final AD Results* are based on substantial evidence because the USD amounts on the invoices do not "actually 'controll{}' the amount owed and paid by the customer." Petitioners' Br. at 5; Gov. Br. at 21. This is simply not true. As explained in Appellant's opening brief, record evidence clearly demonstrates that the unit price, identified in USD, is the controlling price used to calculate the amount the customer ultimately owes.

2

*See* Habaş's Br. at 27-28.  As an example, Petitioners claim that the USD amount paid by the customer does not match "the TL amount owed, using the exchange rate in effect on the date of payment."  Petitioners' Br. at 5.  Habaş provided an order form, e-mail confirmation for the sale, and the associated invoice.  Habaş Section A Questionnaire Response at Exh. A-8 (June 29, 2020), Appx001350-001360 ("Sec. A QR").  The customer order form and e-mail confirmation for the sale both identify the "Efektif fiyat" – effective price – as [ # ] and [ # ] USD, respectively for [ product characteristic ] of the merchandise. *Id.*; *see also* Habaş Case Brief at 4 (Mar. 26, 2021), Appx003062 ("Habaş Case Br.").  Habaş also explained that "{p}urchase orders may correspond to a single invoice or more."  Sec. A QR at 14, Appx001285.  The e-mail confirmation of the sale includes the same information, identifying the products purchased and their respective, effective prices quoted in USD.  *Id.* at Exh. A-8, Appx001352.  The associated invoice includes the "unit price usd" multiplied by the "fx rate" (foreign exchange rate) to calculate the corresponding amount of Turkish Lira at the time of the invoice.  *Id.*, Appx001350-001360.  The USD amount provided as the "unit price" is the same on all three sales documents.  *Id.*  This USD unit price is the only key element for pricing.  Petitioners' argument that the USD amounts do not match the TL amounts, or that the USD amounts do not control are belied by the evidence.  The USD unit price of [ # ] multiplied by the foreign exchange rate

3

of 5.63860, identified in the invoice, equals the TL unit price of [   #   ] TL, also identified in the invoice. *Id.* This TL amount, which is based on the USD amount, reconciles with Habaş's audited financial statements. *See Final Results IDM* at 9, Appx000041.

The TL amounts which correspond to the amount of USD fixed at the time of payment, *i.e.*, [   #   ] TL to [   #   ] USD, also reconcile with the trial balance and the sales amounts reported for this customer, for the month at issue (March), in the reported "average age of receivables." *See* Habaş Section B-C Questionnaire Response at Exhs. B-6 (July 13, 2020) ("Sec. B-C QR"), Appx001723; *see also* Sec. A QR at Exh. A-8, Appx001353. As noted by Petitioners and the Government, [   #   ] USD is the amount of USD fixed at the time of the invoice. *See* Petitioners' Br. at 5-7; Gov. Br. at 24. This is also the USD amount which ties to Habaş's reporting.

In other words, the controlling price to determine the total amount owed by the customer was the USD unit price identified in the purchase order, e-mails with the customer, and the invoice. It was that USD price used to calculate the Turkish Lira price at the time of invoicing. Sec. A QR at Exh. A-8, Appx001360. Last, bank receipts show that Habaş was paid in USD. *Id.* The TL price was not the driver; the USD price controls the ultimate amount the customer paid for the sale. *See id.* at 14, Appx001285 ("{P}rices are quoted and agreed in U.S. dollars.").

4

Commerce's factual findings were not supported by substantial evidence, did not properly grapple with contrary evidence which demonstrates that the USD-denominated price controls the ultimate payment, and must, therefore, be remanded for further considerations. *See CS Wind Viet. Co. v. United States*, 832 F.3d 1367, 1374 (Fed. Cir. 2016) ("Because the reason Commerce offers . . . is without record support, we find Commerce's choice to be unsupported by substantial evidence.").

The United States argues that "the lira-denominated prices provided the only reliable record evidence of the value of Habaş's home market sales." Gov. Br. at 11; *see also id.* at 16. For the reasons described above, this cannot be true. The TL-denominated prices are derived from the USD prices. The United States relies heavily on *Flanges from China* for the proposition that "invoices supporting individual reported sales, on their own, are of minimal utility," but Commerce was considering a different issue in that case: whether the respondent "fully respond{ed} to Commerce's requests to provide supporting documentation in conjunction with its U.S. sales reconciliation." *Stainless Steel Flanges from the People's Republic of China*, 83 Fed. Reg. 13244 (Dep't Commerce Mar. 28, 2018) (prelim. affirm. LTFV determ.), and accompanying Decision Memorandum at 8-10 (Sec. D. GJY) (discussing methodology) ("*Flanges from China*"). Habaş fully responded to Commerce's questionnaires, providing the information requested by

5

CONFIDENTIAL MATERIAL OMITTED

Commerce. Commerce did not request supplemental information with respect to the controlling currency for the sample sale to [customer characteristics] provided. Habaş thus also provided supplemental information, as requested by Commerce, for certain home market sales. *See* Habaş Supplemental Sections A-C Questionnaire Response at 3 (Jan. 7, 2021), Appx001896-001898 ("Sec. A-C SQR").[2] The argument that Habaş "failed to provide" payment documentation is misleading and belied by the record evidence. *See* Gov. Br. at 22. In its supplemental questionnaire, Commerce requested "payment documentation for {certain} home market invoices." *Id.* at 3, Appx1896. Habaş provided such information which related to sales to [customer characteristics & customer name] in the form of SAP printouts including the sales figures in its supplemental response. *See id.* Although Habaş was prepared to respond to supplemental questions from Commerce, Commerce did not request additional information to substantiate what the record shows for its sample sale – its home market sales were controlled by the USD-denominated value.[3] Regardless, the

---

[2] Cited questions are found in the Public Appendix. We note that Commerce's questions in the Confidential Appendix are inadvertently jumbled.

[3] We note that Habaş submitted and Commerce accepted the "average age of receivables" for its payment terms because "is not able to report the date of the receipt of payment on a transaction-specific basis." *See* Sec. B-C QR at 21, Appx001628. Thus, in this review, Commerce has rejected Habaş's home market sales values reported in U.S. Dollars because they do not tie to the audited financial statements, but has accepted Habaş's payment dates which do not necessarily link to the invoices.

6

record demonstrates that Habaş provided reliable sales documents and a reliable sales database, both demonstrating that the controlling sales prices are those reported in USD.

Indeed, here, the invoices cannot be unreliable as they do reconcile to the audited financial statements. *See Final Results IDM* at 9, Appx000041. Those same invoices, along with customer payments, negotiations, and purchase orders, demonstrate that the controlling currency is USD and, thus, the controlling prices are in USD.

### B. Appellees Fail to Demonstrate the Commerce's Decision is Consistent with Its Prior Decisions and Statutory Obligations

Commerce's *Final AD Results* are inconsistent with its prior determinations and, as described above, are unreasonable as they are unsupported by the record evidence. Habaş reasonably relied on Commerce's decisions to regularly use the USD-denominated values. In previous determinations, particularly in investigations and orders on merchandise from Turkey, Commerce has consistently relied on U.S. Dollar values for home-market sales, when the transactional elements, including contracts, confirmations, and payments, were made in dollars between the respondent and the respondent's customers in the home market. *See* Habaş Br. at 11-18. Such an approach aligns with "Commerce's normal policy, as reflected in the questionnaire instructions," is that 'the *sale price*, discounts, rebates and all other revenues and expenses' must be reported 'in the currencies in

7

which they were earned or incurred{.}'" *Certain Hot-Rolled Steel Flat Products From the Republic of Turkey*, 84 Fed. Reg. 30694 (Dep't Commerce June 27, 2019) (final AD results & no shipments determ.; 2016-2017) ("*2016-17 HRS Final Results*"), and accompanying Issues and Decision Memorandum at 9 ("*2016-17 HRS Final Results IDM*") (emphasis in original) (citation omitted).  This approach also accounts for the potential distortion of "the actual home market prices" in instances of "drastic" currency devaluation, an issue endemic to Turkey.  *Certain Cold-Rolled Carbon Steel Flat Products From Turkey*, 67 Fed. Reg. 62126 (Dep't Commerce Oct. 3, 2002) (final LTFV determ.) ("*Cold-Rolled Steel Flat Products from Turkey*"), and accompanying Issues and Decision Memorandum at 4, 5 ("*Cold-Rolled Steel Flat Products from Turkey* IDM"). Commerce's failure to apply the same analysis in this case causes a great distortion of the margin.

The United States offers circular reasoning, arguing that in this review, "there is no departure," from previous reviews but that "{i}n this proceeding, as in the first administrative review, Commerce used the price that controlled the 'final price' of the home market sales."  Gov. Br. at 26.  Contrary to Appellees' arguments, there is a  "conflict between this proceeding and Commerce's final determination in its investigation of cold-rolled steel flat products from Turkey" and Commerce's final decisions in prior reviews of the order at issue – the AD order on HRS from Turkey.  *See id.* at 28; Petitioners' Br. at 7-8 (arguing

8

incorrectly again that "in this case it was the TL-denominated amount on Habas' invoice (not the USD-denominated amount) that controlled the customer's payment.").

In Commerce's prior decisions, it reviewed whether "the price for these transactions is fixed in USD at the time of invoicing" and "this USD price controls the ultimate amount that the purchaser pays for the sale." *2016-17 HRS Final Results IDM* at 10. To determine whether the USD price controlled the ultimate amount, Commerce previously considered whether the respondent set the prices in USD, those prices were negotiated in USD, and that the USD price controlled the USD amount paid by the customer. *Id.* at 9. As for the respondent in *Cold Rolled Steel Flat Products from Turkey*, for Habaş as well, "{t}he TL prices shown on the invoices were not the final prices between the parties, but instead represented the USD value on the date the invoice was issued by" the respondent. *See Cold Rolled Steel Flat Products from Turkey IDM* at 4.

As described above and in Habaş's opening brief, the record demonstrates that the USD price *does* control the ultimate price paid, and that the negotiated and agreed-upon USD unit price can be tied to the TL amounts, as reported in the audited financial statements. *See* Sec. A QR at 14 and Exh. A-8, Appx001285, Appx001350-001360. Commerce's decision "that the dollar-denominated price on the invoice had 'no connection with the ultimate payment,' and that the lira-

9

denominated price was the 'final price'" is wrong. *See* Gov. Br. at 28 (citing Appx000042-000043). The customer expected to and did pay in USD. *See* Sec. A QR at Exh. A-8, Appx001360 (providing evidence of customer payment, which demonstrates payment was made in USD); *see also* Sec. B-C QR at 24, Appx001631(reporting "the gross unit prices in US dollars ("USD") per metric ton . . . in accordance with the currency in which Habaş and its customers agree when sales are booked."); *id.* at 24-25, Appx001631-001632 (reporting line-item totals in USD and TL).

Although each record stands on its own, Commerce did not act reasonably and provided "insufficient reasons for treating similar situations differently" in the instant case. *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) (citation omitted).

### III. CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the reasons set forth above, Commerce's *Final AD Results* were not in accordance with law and were not supported by substantial evidence with respect to Commerce's determination to continue to use the TL-denominated price for Habaş's home market sales. The U.S. Court of International Trade's ("CIT") decision sustaining Commerce's conclusions is similarly not supported by substantial evidence on the record and is otherwise not in accordance with law. Therefore, Habaş Sinai ve Tibbi Gazlar Istihsal Endüstrisi A.Ş. requests that this

10

Court reverse the CIT's decision on this issue, and remand to Commerce with instructions to issue a revised determination, consistent with the opinion of this Court.

Respectfully submitted,

**/s/ Jessica R. DiPietro**
Jessica R. DiPietro
Leah N. Scarpelli
Matthew M. Nolan
ArentFox Schiff LLP
1717 K Street, N.W.
Washington, DC  20006

(202) 857-6000

*Counsel for Habaş Sinai ve Tibbi Gazlar Istihsal Endüstrisi A.Ş.*

March 18, 2024

FORM 19. Certificate of Compliance with Type-Volume Limitations    Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2024-1158

**Short Case Caption:** Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi v. US

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes  2,394  words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 03/18/2024

Signature: /s/ Jessica R. DiPietro

Name: Jessica R. DiPietro

Save for Filing

FORM 31. Certificate of Confidential Material | Form 31
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** 2024-1158

**Short Case Caption:** Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi v. US

> **Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:
>
> - Only count each unique word or number once (repeated uses of the same word do not count more than once).
>
> - For a responsive filing, do not count words marked confidential for the first time in the preceding filing.
>
> The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

The foregoing document contains __18__ number of unique words (including numbers) marked confidential.

☐ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☑ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☐ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: 03/18/2024

Signature: /s/ Jessica R. DiPietro

Name: Jessica R. DiPietro

Save for Filing